DECISION AND JUDGMENT ENTRY
This case is before the court upon appeal from the Norwalk Municipal Court, which entered a judgment on a jury verdict finding appellant Charles K. ("Kim") Semer guilty of assault in violation of R.C. 2903.13(A). For the reasons that follow, we find that the decision of the trial court should be reversed.
This case stems from an altercation between appellant and Argle Runion on or about June 16, 1999. The altercation took place at the home of Barbara Kipp-Rose, formerly known as Barbara Runion. Kipp-Rose was formerly married to Argle Runion, but she was separated from him at the time of the offense. Appellant has had a long-term relationship with Kipp-Rose, a relationship that the two carried on during Kipp-Rose's brief marriage to Runion. At the time of trial, Runion was a sixty-six year old man standing five foot eleven inches tall and weighing one hundred fifty-seven pounds. At the time of trial, appellant was a forty-five year old man standing six feet two inches tall and weighing three hundred forty-two pounds. Appellant is disabled; he has arthritis throughout his body, he has an artificial hip and shoulder, and he uses knee and ankle braces to assist him in walking. He does not work because of his disabilities. Because appellant's and Runion's versions of the facts are remarkably different, we shall address each separately.
At trial, Runion testified that he was at Kipp-Rose's house on June 16, 1999, when appellant appeared there at approximately 7:15 p.m. According to Runion, Kipp-Rose told appellant not to come in the house, but appellant shoved her aside, came into the house, and attacked him. Runion testified that appellant grabbed him by his artificial shoulder and slammed him against the wall, knocked him down, and struck him eight or ten times in the nose, left eye, and left ear. According to Runion, he did nothing to provoke this assault, having spoken not a word to appellant. He also testified that did not strike appellant. Runion was transported by ambulance to the hospital where he received stitches on his nose, eye, and ear. His glasses were broken in the assault. Runion testified that appellant fled after the incident. Though Runion admitted to some amount of "bad blood" between him and appellant, Runion testified that he had never threatened appellant with bodily harm.
Appellant, on the other hand, testified that he stopped by Kipp-Rose's house between 7:00 and 8:00 on the evening of June 16, 1999, and he decided not to enter the house because he saw Runion's car in the driveway. Instead, he stayed in his car and honked the horn. Kipp-Rose came out in response to the horn and told appellant that he could call her when Runion was gone. She then went back into the house through the front door. At about the same time, Runion came out of the house through the back door and, while he was putting something into his truck, he called appellant an obscene name and made an obscene hand gesture at him. Appellant testified that he became "a little afraid" but that he stepped out of his car and went into the house.
According to appellant, when he walked into the house, Kipp-Rose said, "Not in my house, Kim," but appellant explained that he only wanted to talk to Runion because he was "tired of all this going on[.]" According to appellant, Kipp-Rose then left the residence, and appellant began to discuss with Runion the bad history between them. Appellant then turned to leave. He had difficulty navigating the steep back stairs, and as he was doing so, he saw a shadow over his left side. Appellant testified that Runion struck him three times with some sort of weapon; he speculated at trial that it was a claw hammer. Appellant testified that, during the altercation, and after Runion first struck him, he punched Runion about four times, testifying that he feared for his life and that "* * * if I didn't stop him that he would have just pounded and pounded on me." Appellant testified that he went straight to the police station after leaving Kipp-Rose's residence. Two of appellant's neighbors testified that they observed a big lump on appellant's head on the evening of the altercation.
On cross-examination, appellant conceded that the altercation could have been avoided had he just pulled out of the driveway and not gone into the house, but he also testified that he went into the house to talk, not to fight, and that he did not strike the first blow.
Barbara Kipp-Rose testified as well. According to Kipp-Rose, the two men began arguing when appellant entered the house, and she immediately left the house to call the police. She testified that she did not witness any of the physical altercation. When questioned about two conflicting statements she had given to police (the first was supportive of Runion's version of the facts and the second was more similar to the testimony she gave at trial), she testified that in the first statement she just wrote down the version of the facts as related to her by Runion. Additionally, though she was questioned extensively about Runion's temperament, due to the prosecutor's objections she was only able to testify that Runion was a violent man who had a "short fuse." The two police officers that responded at the scene were asked about Runion's reputation, and neither testified that he had a violent reputation.
Appellant was charged with assault in violation of R.C. 2903.13(A), a first degree misdemeanor. He pleaded not guilty, and the case was tried on October 27, 1999. At trial, defense counsel tried to elicit testimony both from appellant and Kipp-Rose about specific instances of violence or threats perpetrated by Runion. The trial court excluded this evidence. The jury found appellant guilty of assault, and the trial court entered a judgment entry on the verdict on October 27, 1999. Appellant now appeals, setting forth the following assignments of error:
 "THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT EXCLUDED EVIDENCE OF SPECIFIC INSTANCES OF THE ALLEGED VICTIM'S PAST VIOLENT CONDUCT, INCLUDING EVIDENCE OF THREATS AGAINST APPELLANT HIMSELF, WHERE THE APPELLANT WAS CHARGED WITH ASSAULT AND CLAIMED SELF-DEFENSE, AND SUCH EVIDENCE WAS MATERIAL TO THE ALLEGED VICTIM'S MOTIVE FOR STARTING THE ALTERCATION, AS WELL AS TO THE APPELLANT'S STATE OF MIND.
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT, AND DEPRIVED HIM OF DUE PROCESS OF LAW, WHEN IT MADE INAPPROPRIATE COMMENTS TO A DEFENSE WITNESS ABOUT HER TESTIMONY, IN THE PRESENCE OF THE JURY."
We find the first and third assignments of error not well-taken. As to the first, manifest weight, we find that the record, as it was presented to the jury, amply supported the jury's verdict. See State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, motion for reconsideration denied (1997). With regard to appellant's third assignment of error, we review this assignment for plain error since counsel did not object to the trial court's statement when it was made. See State v. Waddell (1996),75 Ohio St.3d 163, 166; State v. Joseph (1995), 73 Ohio St.3d 450, 455, reconsideration denied (1995), 74 Ohio St.3d 1423. Since the record is not at all clear that the trial court's statement was made loudly enough for the jury to hear, we cannot say the trial court committed plain error in making the statement.
In his second assignment of error, appellant challenges certain of the trial court's evidentiary rulings. Specifically, appellant claims that evidence of Runion's specific acts of violence or threats of violence should have been admitted to show appellant's state of mind at the time of the altercation and to show Runion's motive for starting the altercation. Appellant contends that the exclusion of this evidence hindered him in proving his self-defense claim.[1] Because a trial court has discretion to decide which evidence to admit or deny, we review this assignment of error for abuse of discretion. See Peters v. StateLottery Comm. (1992), 63 Ohio St.3d 296, 299; Olmsted Twp. Bd. ofTrustees v. City of Berea (June 18, 1998), Cuyahoga App. No. 73782, unreported. The Supreme Court of Ohio has stated that "[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is Cunreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
Evid.R. 404 and Evid.R. 405 apply to this issue. These sections provide, in pertinent part:
 "RULE 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes
 (A) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
"* * *.
 "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
"* * *.
"RULE 405. Methods of Proving Character
 "(A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
Applying these rules in the context of a self-defense claim, it is generally understood that evidence of specific acts tending to show the victim's violent character are properly admitted to establish the defendant's state of mind at the time of the offense, as long as the defendant knows of these specific acts at the time of the offense. See,e.g., Holbrook v. Swabley (May 24, 1996), Huron App. No. H-95-043, unreported; State v. Blackmon (1998), 131 Ohio App.3d 465, 468; State v.Cuttiford (1994), 93 Ohio App.3d 546, 553-554, appeal denied (1994),70 Ohio St.3d 1415; State v. Barnes (July 21, 2000), Portage App. No. 98-P-0052, unreported; State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported; State v. Weston (July 16, 1999), Washington App. No. 97CA31, unreported, discretionary appeal not allowed (1999),87 Ohio St.3d 1441. Based on this authority, we find that the court erred in not allowing appellant and Kipp-Rose to testify regarding Runion's specific acts of violence or threats of violence that were known to appellant in order to establish appellant's state of mind at the time of the offense.
Additionally, appellant and Kipp-Rose should have been allowed to testify about Runion's specific acts of violence or threats of violence to show that Runion was likely the aggressor.
See State v. Schmidt (1979), 65 Ohio App.2d 239, 243-244. We recognize that many appellate districts in this state hold that specific acts may not be admitted to show that the victim was likely the aggressor because the victim's character is not an essential element of the defense of self-defense. (Evid.R. 405(B) provides, "In cases in which character * * * is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.") See, e.g., Cuttiford,93 Ohio App.3d at 555; Busby, supra; Weston, supra. However, we agree with the reasoning of the Portage County Court of Appeals, which held that evidence of specific acts are properly admitted to show that the victim was likely the aggressor, stating:
 "To be successful on a claim of self-defense, a defendant must first be able to show that he was not at fault in creating the situation leading to the affray. Logically, one would assume that if the victim has a propensity for violence, evidence demonstrating such propensity would be relevant as to the question of who started the fracas. In a sense, then, the victim's propensity for violence is an essential element of the defendant's defense, and evidence to that effect should be admissible." State v. Barnes, supra.
Because we find that appellant should have been allowed to admit evidence of Runion's specific acts of violence or threats of violence to establish both appellant's state of mind at the time of the offense and to show that Runion was likely the aggressor, we find appellant's second assignment of error well-taken. Appellant is therefore entitled to a new trial.
Finding our decision to be in conflict with the Ninth District Court of Appeals in State v. Cuttiford (1994), 93 Ohio App.3d 546, the Fourth District Court of Appeals in State v. Weston (July 16, 1999), Washington App. No. 97CA31, unreported, and the Tenth District Court of Appeals inState v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported, we hereby certify the record of this matter to the Supreme Court of Ohio to determine whether, under Evid.R. 404 and Evid.R. 405, evidence of specific acts is admissible in a self-defense case to show that the victim was likely the aggressor.
On consideration whereof, since appellant was denied a fair trial, the decision of the Norwalk Municipal Court is reversed, and this case is remanded for a new trial. Court costs are assessed to appellee.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ Mark L. Pietrykowski, J.
Peter M. Handwork, J., James R. Sherck, J., CONCUR.
[1] In Ohio, the elements of self-defense are:
 "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Thomas (1997), 77 Ohio St.3d 323, 326.